IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYAN JEFFREY SCROGGINS, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. CIV-19-146-RAW-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

The claimant Bryan Jeffrey Scroggins requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty-three years old at the time of the administrative hearing (Tr. 37). He completed ninth grade and has worked as a truck driver, equipment operator, and road construction laborer (Tr. 26, 180). The claimant alleges inability to work since an amended onset date of May 1, 2016, due to a back injury, ADHD, anxiety, knee injury, high blood pressure, bursitis in right shoulder, frequent chest pain, insomnia, and cubital tunnel syndrome (Tr. 179).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on August 12, 2016. His application was denied. Following an administrative hearing, ALJ Sylke Merchan found that the claimant was not disabled in a written opinion dated July 5, 2018 (Tr. 15-27). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. At step two, the ALJ found the claimant had the severe impairments of obesity, degenerative disc disease, degenerative joint disease, and anxiety (Tr. 17). At step four, she then found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could not climb ladders/ropes scaffolds,

and he could only occasionally climb ramps/stairs, balance, stoop kneel, crouch, crawl, or perform overhead reaching. Additionally, she determined that the claimant needed an hourly sit/stand option. Finally, she found the claimant could perform simple, repetitive, routine tasks with no strict production requirements, and that he could tolerate occasional changes in the work setting and occasional contact with co-workers and supervisors, but that he could have no public contact (Tr. 20). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, sorter, document preparer, escort vehicle driver, and touch up screener (Tr. 26-27).

## Review

The claimant's sole contention of error is that he is unable to perform the jobs identified at step five by the ALJ, in light of the assigned RFC. Because this contention lacks merit, the decision of the Commissioner should be affirmed.

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform with his limitations (Tr. 54-57). The ALJ posited, *inter alia*, a hypothetical in which an individual with the age, education, and work history of the claimant would have the RFC to perform sedentary work but was "limited to no ladders, ropes or scaffolds; no more than occasional as to the remaining postural activities; no climbing ramps or stairs, balancing, stooping, crouching, crawling or kneeling; no overhead reaching with the right upper extremity. Further limited to only *simple, routine, repetitive tasks*, with no strict production requirements; no more than occasional changes in the work setting; no public contact; and no more than occasional

contact with co-workers and supervisors" as well as a sit/stand option on an hourly basis (Tr. 54-56) (emphasis added). The VE indicated that the claimant could not perform any of her past work but identified four sedentary jobs such a person could perform: (i) sorter, DICOT § 739.687-182; (ii) document preparer, DICOT § 249.587-018; (iii) escort vehicle driver, DICOT § 919.663-022; and (iv) touch-up screener, DICOT § 726.684-110 (Tr. 55-56). The VE indicated that the information provided was not in conflict with the Dictionary of Occupational Titles ("DOT") (Tr. 53).

As relevant to this appeal, the ALJ in his written decision adopted the VE's testimony that the claimant could perform the sedentary, unskilled jobs of sorter, document preparer, escort vehicle driver, and touch-up screener (Tr. 27). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 27). The claimant asserts that he nevertheless is unable to perform any of the jobs identified because there is a conflict between the information provided and the Dictionary of Occupational Titles ("DOT").

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there *is* a conflict with regard to the reasoning levels

of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). The undersigned Magistrate Judge will discuss the jobs in turn.

First, the job of document preparer has a reasoning level of 3, *see* DICOT § 249.587-018. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* DICOT § 249.587-018. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. As to this job, the Court agrees that there is a conflict here which the ALJ failed to identify because level three reasoning is inconsistent with a limitation to simple, routine, repetitive tasks, which is part of the claimant's assigned RFC. *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning.").

Two of the remaining jobs, escort vehicle driver and touch-up screener, have reasoning levels of 2. *See* DICOT §§ 919.663-022, 726.684-110. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but

uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  See DICOT §§ 919.663-022, 726.684-110.  The claimant asserts that this reasoning level is likewise incompatible with simple work.  The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion.  See *Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one.  We disagree.").  See also *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions[,] [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

    Finally, the undersigned Magistrate Judge turns to the fourth job identified, which has a reasoning level of 1:  sorter, DICOT § 739.687-182.  Although the claimant does not challenge the job identified based on the reasoning level, the claimant nevertheless contends that this job is also in conflict with the RFC assigned because the definition of the job *implies* that the claimant must meet strict production requirements, *i e.*, it states that a person must "examine[] squares (tiles) of felt-based linoleum material passing along on

conveyor and replaces missing and substandard tiles." DICOT § 739.687-182. At the administrative hearing, the claimant's representative questioned the VE about all the jobs identified, asking "Okay, so when we talk about no strict production rate, still, they're demanding a certain rate of production?" (Tr. 57). In response, the VE stated, "People hire you to work. And if you're not working, they don't want you." (Tr. 57). The undersigned Magistrate Judge here agrees with the Commissioner that neither the DOT description of the sorter job, nor the VE's testimony, appear to support a finding that the job requires a production-rate pace. *See* DICOT § 739.687-182. Additionally, the undersigned Magistrate Judge notes that other Courts appear to conclude "even when a job entails the act of producing, packaging, or assembling, this does not necessitate that the job also requires a certain production or assembly-line pace." *Vizzini v. Berryhill*, 2018 WL 4561623, at *4 (W.D. N.C. Sept. 24, 2018) (collecting cases). *See also Browning v. Berryhill*, 2018 WL 6187525, at *4 (S.D. W.V. Nov. 9, 2018) (unchallenged VE testimony that conveyor line bakery worker position would not require rapid pace or strict production quotas); *Berlener v. Colvin*, 2015 WL 4920772, at *5 (E.D. Missouri Aug. 18, 2015) (VE testified that job of bottling line attendant would not require production quota, affirmed on other grounds); *Wilkerson v. Berryhill*, 2017 WL 4340365, at *11 (N.D. Calif. Sept. 29, 2017) (unchallenged VE testimony that bottling line attendant position had a "less than average emphasis on production quotas."). But even if this job were identified in error, the undersigned Magistrate Judge finds that such error would be harmless for the reason given below.

Because there are still jobs that have been identified that do not pose a conflict, the undersigned Magistrate Judge finds that the identification of the document preparer job is harmless error and that any error related to the sorter job would likewise be harmless. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform). Accordingly, the decision of the ALJ should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**